UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| VAUGHN BOYD, SWI-DE, LLC, d/b/a DREW ESTATE, <br><br> Plaintiffs, <br><br> vs. <br><br> DEADWOOD TOBACCO COMPANY, a/k/a DEADWOOD TOBACCO COMPANY CORPORATION, and WILLIAM RECTENWALD, <br><br> Defendants. | 5:24-CV-05017-CCT <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

Defendants Deadwood Tobacco Company, a/k/a Deadwood Tobacco Company Corporation, and William Rectenwald (collectively, "Defendants") move, pursuant to the doctrine of forum non conveniens and Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint filed by Plaintiffs Vaughn Boyd and SWI-DE, LLC, d/b/a Drew Estate (collectively, "Plaintiffs"). Docket 11 at 2–3. Alternatively, Defendants request that this Court abstain from exercising jurisdiction, Docket 12 at 4, or stay the proceedings until the pending South Dakota state court action between the parties is resolved, Docket 11 at 4. Plaintiffs oppose the motion to dismiss and alternative requests. Docket 17.

1

**BACKGROUND**

The Court takes the following facts from Plaintiffs' complaint and accepts them as true for purposes of this order. *See Broin & Assocs., Inc. v. Genecor Intern., Inc.*, 232 F.R.D. 335, 338 (D.S.D. 2005) (noting that on a motion to dismiss, the court assumes the facts alleged in the complaint are true and views the allegations in a light most favorable to the nonmoving party).

Vaughn Boyd is the founder of Deadwood Tobacco Company a/k/a Deadwood Tobacco Company Corporation (DTC). Docket 1 ¶ 11. DTC is a retail store and cigar bar in Deadwood, South Dakota. *Id.* SWI-DE, LLC, d/b/a Drew Estate (Drew Estate) "is one of the largest premium cigar manufacturers in the world[,]" *Id.* ¶ 7, and DTC sold cigars manufactured by Drew Estate in its retail store, *Id.* ¶ 11. "Starting in or about 2009, Drew Estate agreed with Boyd to create, make, and sell to DTC a shop-exclusive Drew Estate Cigar under the mark DEADWOOD TOBACCO CO. SWEET JANE." *Id.* ¶ 12. "[I]n or around 2013 and 2014, respectively, Drew Estate agreed with Boyd to create, manufacture and sell to DTC two additional shop-exclusive cigars under the marks DEADWOOD TOBACCO CO. FAT BOTTOM BETTY and DEADWOOD TOBACCO CO. CRAZY ALICE." *Id.* ¶ 13.

According to Plaintiffs, the cigar blends for these cigars "were selected from a unique set of proprietary blends owned by Drew Estate." *Id.* ¶ 15. Drew Estate also "created iconic 'sugar skull' images of female characters" for the packaging of each above-named cigars. *Id.* ¶ 16. These female images "together represented the marketing narrative of this DEADWOOD brand line of cigars—

strong, heartbreaking women from the brothels and barrooms of the seedy underbelly of the Old West in Deadwood, South Dakota." *Id.* And Plaintiffs, "[i]n reference to this brand narrative and the delicious cigar blends used for the three cigars in this brand," "marketed and promoted them under the name THE YUMMY BITCHES." *Id.* Plaintiffs collectively refer to the marks for the three named cigars and the brand THE YUMMY BITCHES as the "DEADWOOD Marks." *Id.*

While the three named cigars "remained Drew Estate shop-exclusives sold only to DTC" until 2016, "based on the consumer response to the unique blend profiles, iconic brand imagery, and compelling narrative of the cigars sold under the DEADWOOD Marks, Drew Estate and Boyd agreed that they could be successful nationwide if released and sold under the DEADWOOD Marks by Drew Estate throughout the country." *Id.* ¶¶ 17–18. In approximately July 2016, Drew Estate and DTC "entered into an exclusive license agreement under which DTC granted Drew Estate an exclusive worldwide license to, among other things, the DEADWOOD Marks, granting to Drew Estate the exclusive right to, among other things, make and sell cigars under the DEADWOOD Marks." *Id.* ¶ 19. Thereafter, "Drew Estate announced its national release of the DEADWOOD brand cigars" at "the largest trade show in the premium cigar industry[.]" *Id.* ¶ 20.

According to Plaintiffs, they "have spent millions of dollars" since 2009 "promoting the DEADWOOD Marks[,]" *Id.* ¶ 21, and because of the "extensive promotion and use of the DEADWOOD Marks and their distinctiveness, the

3

purchasing public (including retailers and end users) has come to recognize DEADWOOD TOBACCO CO. SWEET JANE, DEADWOOD TOBACCO CO. FAT BOTTOM BETTY, and DEADWOOD TOBACCO CO. CRAZY ALICE as a family of products marketed under a family of trademarks with a common origin[,]" *Id.* ¶ 22. Also, "the DEADWOOD Marks have become one of the most successful and widely sold cigar brands in the United States, and both Drew Estate's direct customers (such as retailers) as well as the end user consuming public have come to associate the DEADWOOD Marks with Drew Estate, which inures to the benefit of Boyd as licensor." *Id.* ¶ 23.

Boyd owns various U.S. Trademark Registrations for cigars, namely trademark registrations for DEADWOOD TOBACCO CO. SWEET JANE, DEADWOOD TOBACCO CO. FAT BOTTOM BETTY, and DEADWOOD TOBACCO CO. CRAZY ALICE. *Id.* ¶ 24. Plaintiffs refer to these as the "Registered Marks." *Id.* According to Plaintiffs, Boyd exclusively licensed to Drew Estate both the Registered Marks and the DEADWOOD Marks (collectively, the "Asserted Marks"). *Id.* ¶¶ 24, 27. "Based on the exclusive license, Drew Estate has devoted substantial resources to building up goodwill and name recognition in the Asserted Marks for cigars, both individually and as a family[,]" and it "has sold millions of dollars of cigars under the Asserted Marks." *Id.* ¶ 28.

On April 1, 2018, Boyd sold DTC to William and Jolene Rectenwald. *Id.* ¶ 29. The sale excluded the Asserted Marks and Drew Estate's exclusive

license. *Id.* Plaintiffs' complaint does not allege additional details regarding the sale.

According to Plaintiffs, since Boyd sold DTC to the Rectenwalds, "DTC, under the direction and control of [William] Rectenwald, has started to promote and sell cigars under trademarks that are confusingly similar to the Asserted Marks," *Id.* ¶ 30, and "has started to market its infringing products by trading on the goodwill in the Asserted Marks developed and owned by Plaintiffs[,]" *Id.* ¶ 32. Plaintiffs further claim that "DTC, under the direction and control of [William] Rectenwald, has been offering for sale and selling the cigars in its retail store and on its website using the Asserted Marks[.]" *Id.* ¶ 33. Plaintiffs allege that DTC and Rectenwald did not "obtain permission to use any of the Asserted Marks from either Plaintiff." *Id.* ¶ 31.

On March 22, 2024, Plaintiffs brought this suit against Defendants, alleging federal trademark infringement (count one), federal unfair competition and false designation of origin (count two), and cancellation of federal trademark registrations (count three). *Id.* ¶¶ 45–76. Plaintiffs' complaint lists the alleged "Infringing Marks" used by DTC, some of which DTC has obtained or sought United States trademark registration, as: DTC DEADWOOD TOBACCO COMPANY; DEADWOOD TOBACCO CO. CHASING THE DRAGON; DEADWOOD TOBACCO CO. CHASING THE DRAGON ZERO; DEADWOOD TOBACCO CO. CHASING THE DRAGON AUNTIE; DEADWOOD TOBACCO CO. CHASING THE DRAGON MIDNIGHT OIL; DEADWOOD TOBACCO CO. ZERO;

DEADWOOD TOBACCO CO. AUNTIE; DEADWOOD TOBACCO CO. MIDNIGHT OIL. *Id.* ¶ 32.

According to Plaintiffs, DTC's continued use of the Infringing Marks "has created and will continue to create a likelihood of confusion with cigars sold by Drew Estate under the Asserted Marks." *Id.* ¶ 35. They further contend that DTC's continued use of the Infringing Marks has caused "actual confusion as to the source or origin of the goods on which such marks are used both at the retailer and end consumer level." *Id.* ¶ 36. In regard to William Rectenwald, Plaintiffs allege that he "has deliberately directed the infringing conduct on the part of DTC, thus increasing the likelihood of confusion" and "selected the Infringing Marks with the bad faith intent to create consumer confusion." *Id.* ¶ 42. Plaintiffs claim to have suffered injury and damage as a result of DTC's use of the Infringing Marks. *Id.* ¶ 41.

Defendants filed the pending motion, seeking dismissal of Plaintiffs' complaint in its entirety pursuant to the doctrine of forum non conveniens and under Federal Rule of Civil Procedure 12(b)(6). Docket 11 at 2–3. Defendants alternatively request that the Court abstain from exercising jurisdiction or stay further proceedings until the pending South Dakota state court matter between the parties is resolved. *Id.* at 4; Docket 12 at 4. Plaintiffs oppose the motion to dismiss and alternative requests. Docket 17. The Court held a hearing on Defendants' motion on January 27, 2025. Docket 36. Having now considered the parties' written and oral submissions, the Court will address only whether

6

dismissal is appropriate under the doctrine of forum non conveniens, as the resolution of that question is dispositive.

## DISCUSSION

The Court notes that Plaintiffs filed a similar lawsuit against DTC in a federal district court in Florida on June 14, 2023. Docket 12-1. In that case, Plaintiffs alleged claims, like they do in the current lawsuit, for federal trademark infringement, federal unfair competition and false designation of origin, and cancellation of DTC's federal trademark registrations. *Id.* at 1. Plaintiffs also sought, in the Florida complaint, a declaratory judgment regarding the parties' rights under the various contracts executed between them to use certain trademarks in connection with cigars. *Id.*

Similar to Defendants' motion here, DTC filed a motion to dismiss Plaintiffs' Florida lawsuit in part based on the doctrine of forum non conveniens. Docket 12-2 at 1. In considering the motion, the Florida district court noted that Boyd sold DTC to the Rectenwalds under a Stock Purchase Agreement, and pursuant to that agreement "DTC (now owned by the Rectenwalds) retained the trademark for 'Deadwood Tobacco Co. & Cigar Bar'" but did not retain the DEADWOOD Marks. Docket 12-3 at 3. The court further noted that in a subsequent agreement, DTC assigned to Boyd all of its rights, interests, and obligations under the exclusive license agreement with Drew Estate. *Id.*

However, the court did not thereafter determine the parties' respective rights, if any, to the implicated trademarks because the court concluded that

7

South Dakota is the appropriate forum in which the parties must resolve their dispute. *See generally* Docket 12-3. In that regard, the court found that the Stock Purchase Agreement contains a valid, enforceable forum selection clause, mandating and designating South Dakota as the exclusive forum. *Id.* at 21. The court rejected Plaintiffs' argument that the forum selection clause does not apply because the Stock Purchase Agreement is not implicated, reasoning instead that the terms of the sale of DTC to the Rectenwalds is central to determining which party has the right to use the implicated trademarks. *Id.* at 13–14. The court also determined that South Dakota would be an adequate forum to resolve the parties' dispute; that "the public-interest factors overwhelmingly favor dismissal"; and that litigating the case in South Dakota will not prejudice Plaintiffs. *Id.* at 17–21. On March 4, 2024, the court issued its decision dismissing Plaintiffs' lawsuit against DTC under the doctrine of forum non conveniens. *Id.* at 21–22.

While the motion to dismiss was pending in the Florida district court, DTC filed a lawsuit against Plaintiffs on September 6, 2023, in the South Dakota state circuit court located in Lawrence County, seeking a declaratory judgment related to, among other things, the parties' rights under the various written agreements they executed. Docket 12-4. The record here does not contain Plaintiffs' answer; however, Plaintiffs represented to this Court that they filed counterclaims against DTC in the state case. Docket 17 at 7. The parties agree that the state case remains pending.

With that background, the Court now addresses the merits of Defendants' motion to dismiss. Defendants argue that Plaintiffs cannot "sidestep" the forum selection clause by not referring to the Stock Purchase Agreement (Agreement) in their complaint. Docket 12 at 6. In their view, because the Agreement "transferred some, but not all, of Defendants' trademarks to Plaintiff Vaughn Boyd, and . . . Defendants retained ownership of the very first trademark used in cigar sales, 'Deadwood Tobacco Co. & Cigar Bar'[,]" the parties' trademark rights "are clearly creations of contract, and those contractual rights need to be determined before any trademark claim can be made or proven." *Id.* at 6–7. Defendants further argue that the forum selection clause is mandatory and enforceable and requires the parties to litigate their dispute in South Dakota *state* court in Lawrence County. *Id.* at 7–8.

In response, Plaintiffs agree that they "removed allegations from the prior pleading in the Florida Action" that referred to the Agreement and state law claims. Docket 17 at 7. However, they assert they did so because the removed allegations "were not relevant to the federal trademark claims[,]" and they want their federal trademark claims decided in a federal forum. *Id.* In Plaintiffs' view, because their current suit asserts only federal claims, it "differs materially from the suit" filed in Florida "and requires a separate and distinct analysis regarding whether this is an appropriate forum for these federal claims to be adjudicated." *Id.* at 6–7. They also contend that "it would be improper at the motion to dismiss stage to consider allegations outside the four corners of

[their] Complaint." *Id.* at 8. Curiously, though, Plaintiffs direct this Court to a transcript from a proceeding in Defendants' state court action wherein, according to Plaintiffs, Defendants did not dispute that Boyd owns the Deadwood Marks. *Id.* at 7 (citing Docket 17 Ex. 1). Plaintiffs then rely on this alleged lack of dispute in support of their argument that the Agreement "is not relevant" to their current federal law claims. *Id.*

Plaintiffs also assert that "significant prejudice will result if the federal trademark claims are required to be brought in state court[,]" including that it will deprive them of their chosen forum. *Id.* at 9. Plaintiffs also claim prejudice will result because of certain arguments Defendants made in state court, including, for example, that Plaintiffs' trademark claims "should not be litigated in state court unless or until its claim is resolved first." *Id.* at 9–10 (citing Docket 17 Ex. 1).

Alternatively, Plaintiffs argue that if the forum selection clause applies, it does not mandate that suit be brought in South Dakota *state* court because there is no language specifying the state court to the exclusion of the federal court. *Id.* at 11. And while they note that the clause uses the phrase "shall have jurisdiction[,]" they contend that such language reflects an agreement "that the state court has jurisdiction over the parties and subject matter" and not that the state court has jurisdiction "to the exclusion of the federal court sitting in or over Lawrence County, South Dakota." *Id.* at 4.

10

### I.     *Whether the Forum Selection Clause is Implicated*

Contrary to Plaintiffs' view, this Court is not restricted to the four corners of the complaint when ruling on Defendants' motion to dismiss under the doctrine of forum non conveniens. *See Heldt v. Payday Fin., LLC*, 12 F. Supp. 3d 1170, 1173 (D.S.D. 2014) (considering matters outside the complaint when ruling on a motion to dismiss under the doctrine of forum non conveniens); *Ney v. 3i Group, P.L.C.*, Civ. No. 21-50431, 2023 WL 6121774, *3 (5th Cir. Sept. 19, 2023) (citing *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1082–83 (E.D. Cal. 2019), *aff'd*, 818 F. App'x 694 (9th Cir. 2020); *Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1322 (S.D. Fla. 2016); *Turner v. Costa Crociere S.P.A.*, 488 F. Supp. 3d 1240, 1245–46 (S.D. Fla. 2020)). Therefore, in addition to Plaintiffs' complaint, the Court considers the exhibits attached to Defendants' motion and to Plaintiffs' response, and facts that appear undisputed. *See Heldt*, 12 F. Supp. 3d at 1173.

Having reviewed that information, it is apparent to the Court that resolution of the Plaintiffs' current federal claims against Defendants only under federal statutes will require examining the scope and nature of Boyd's sale of DTC to the Rectenwalds in April 2018. Indeed, this sale is the impetus of the parties' trademark dispute. *See, e.g., Omron Healthcare, Inc. v. Maclaren Exps. Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994) (concluding that the parties' trademark dispute arose out of the contractual agreement because resolution of the dispute requires "an understanding of the parties' written bargain and of

11

its implied terms"). And Plaintiffs' complaint recognizes as much—Plaintiffs allege in their complaint that Defendants' infringing activities occurred after Boyd sold DTC to the Rectendwalds in April 2018, which sale excluded "the Asserted Marks and the right to the exclusive license to Drew Estate." Docket 1 ¶ 29.

Moreover, as Defendants note, and Plaintiffs do not dispute, Defendants acquired the trademark "Deadwood Tobacco Co. & Cigar Bar" as part of the sale. Docket 12-4 ¶ 6. Therefore, the question whether Defendants' use of what Plaintiffs call the Infringing Marks (*see* Docket 1 ¶ 32 listing those marks) is unauthorized cannot be decided without, at the very least, understanding the nature and scope of the sale. This in turn means that the forum selection clause in the Agreement is implicated notwithstanding that Plaintiffs artfully avoided any reference to the Agreement in their current federal complaint.[1] *See, e.g., Terra Intern., Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) ("Strategic or artfully drawn pleadings, however, will not work to circumvent an otherwise applicable forum selection clause.").

---

[1] Plaintiffs do not argue that the type of claims alleged in their complaint fall outside the scope of the forum selection. They also do not assert that language in the other contracts executed by the parties somehow affects this Court's determination of the proper forum. Finally, Plaintiffs do not argue that Drew Estate, a non-signatory to the Agreement, is not bound by the forum selection clause. By not raising these issues, Plaintiffs have forfeited them. *See Noem v. Haaland*, 542 F. Supp. 3d 898, 916 (D.S.D. 2021) (noting the general rule that the failure to make an argument waives that argument).

## II.     *Whether the Forum Selection Clause is Permissive or Mandatory*

"Whether a forum selection clause is mandatory or permissive is a matter of contract interpretation"; therefore, generally, courts should apply the law of the forum state when interpreting a forum selection clause. *Fischer Farms v. Big Iron Auction Co., Inc.*, CIV No. 19-4111, 2020 WL 475607, *5 (D.S.D. Jan. 28, 2020) (citation omitted). Under South Dakota law, a court interprets a contract by looking "to the language that the parties used in the contract to determine their intention." *Charlson v. Charlson*, 892 N.W.2d 903, 908 (S.D. 2017) (quoting *Poeppel v. Lester*, 827 N.W.2d 580, 584 (S.D. 2103)). Also, the court looks at "the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." *Vollmer v. Akerson*, 688 N.W.2d 225, 228–29 (quoting *Citibank (S.D.), N.A. v. Hauff,* 668 N.W.2d 528, 533 (S.D. 2003)). Therefore, a court will not "seek out a strained or unusual meaning for the benefit of one party." *Id.* (citation omitted).

> Here, the forum selection clause in the Agreement provides:
>
> Venue for any dispute arising out of this Agreement shall be Lawrence County, South Dakota, and the circuit court in Lawrence County, South Dakota shall have jurisdiction over the parties and subject matter of the dispute.

Docket 12 at 3.

To be mandatory, the forum selection clause must "require a case to be brought in an identified venue based on 'specific language indicating the parties' intent to make jurisdiction exclusive.'" *Fischer*, 2020 WL 475607, *4

13

(quoting *High Plains Const., Inc. v. Gay*, 831 F. Supp. 2d 1089, 1102 (S.D. Iowa 2011)). "Permissive forum-selection clauses, on the other hand, 'constitute *nothing more* than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum.'" *Id.* (citation omitted) (emphasis added). "Generally, courts have found that use of the words 'may' and 'should' signify permissive clauses, while use of the words 'shall,' 'will' or 'must' signify mandatory clauses." *Fla. State Bd. of Admin. v. Law Eng'g & Envtl. Servs., Inc.,* 262 F. Supp. 2d 1004, 1009 (D. Minn. 2003); *see also NRRM, LLC v. Endurance Warranty Servs., LLC,* 4:24-CV-01128-SEP, 2024 WL 4533522, *5 (E.D. Mo. Oct. 21, 2024).

    The Court concludes that the language of the parties' forum selection clause is mandatory, not permissive. The clause *requires* any dispute arising out of the Agreement to be *in Lawrence County, South Dakota* and that "the circuit court in Lawrence County, South Dakota *shall* have jurisdiction over the parties and subject matter of the dispute." Docket 12 at 3 (emphasis added). Thus, the parties did not merely give consent to personal jurisdiction in the named venue. Rather, they mandated that they bring their disputes arising out of the Agreement in Lawrence County.

    The Court further concludes that the forum selection clause is exclusive to the South Dakota *state court* to the exclusion of the federal district court with jurisdiction over claims arising out of Lawrence County, South Dakota. Under 28 U.S.C. § 122, the western division—this Court—comprises Lawrence County. Thus, the reference to Lawrence County read in isolation might

14

suggest the parties did not intend to exclude this federal district court as a forum. But under South Dakota rules of contract interpretation, words and phrases cannot be read in isolation. *Tri-City Assocs. L.P. v. Belmont, Inc.*, 845 N.W.2d 911, 915 (S.D. 2014). Rather, the Court must look at the clause as a whole, and when that is done, it is evident that the parties agreed that venue for any dispute arising out of the Agreement will be *the circuit court* in Lawrence County and not more broadly in *any court* sitting over claims arising out of Lawrence County. Importantly, there is no federal court in Lawrence County, only a circuit court. Therefore, an interpretation of the forum selection clause that includes the federal court with jurisdiction over Lawrence County would require the Court to re-write the clause. But as other courts have held, when a clause states that any action be brought in a specific court, an action cannot be brought in a different court in that state, and the court will not re-write the parties' agreement. *NRRM*, 2024 WL 4533522, *5 (determining that because the clause provides that the action be brought in a specific court in St. Charles County, and "there is no federal courthouse in St. Charles County, Missouri, the only court the Settlement Clause could be referring to is the state court located in St. Charles County"); *Yakin v. Tyler Hill Corp.,* 566 F.3d 72, 76 (2d Cir. 2009) (interpreting forum selection clause that refers to a specific county that does not have a federal court to mean the parties agreed to a specific forum that was not federal); *City of Albany v. CH2M Hill, Inc.*, 924 F.3d 1306, 1308 (9th Cir. 2019) (holding that "[a]n agreement limiting venue for litigation

15

to a particular county unambiguously prohibits litigation in federal court when there is no federal courthouse located in the designated county").

### III. Whether the Doctrine of Forum Non Conveniens Applies

The United States Supreme Court noted that when a "contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum[,]" that clause "should be given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W.D. of Tex.*, 571 U.S. 49, 63 (2013). Doing so protects the parties' "legitimate expectations and furthers vital interests of the justice system." *Id.* Moreover, "when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id.* Therefore, "the plaintiff's choice of forum merits no weight." *Id.* Also, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64.

Instead, "a district court may consider arguments about public-interest factors only." *Id.* "These 'public-interest factors' may include [ ] 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Omega Liner Co., Inc. v. Monte Vista Grp., LLC*, Civ. No. 18-4105, 2019 WL 4415378, *8

(D.S.D. Sept. 16, 2019) (citation omitted). Plaintiffs bear "the burden of establishing that enforcement of the clause is unwarranted." *Id.*

Here, Plaintiffs do not argue that the above public interest factors weigh against enforcing the forum selection clause. Rather, they claim that dismissal of their federal lawsuit is unwarranted because there is a "strong policy behind litigating federal trademark claims in federal court[.]"[2] Docket 17 at 4. However, Plaintiffs direct this Court to no law or policy demanding that disputes be litigated in the tribunal with arguably the most expertise. It is worth noting that to accept Plaintiffs' argument means that federal courts should not exercise diversity of citizenship jurisdiction because state courts have more experience with their own laws. Regardless, because Plaintiffs have not overcome the presumption of enforceability of the forum selection clause agreed to by the parties, the Court declines to "unnecessarily disrupt the parties' settled expectations." *See Atlantic Marine,* 571 U.S. at 66.

Accordingly, it is hereby

ORDERED that Defendants' motion to dismiss, Docket 11, is granted.

---

[2] Plaintiffs also claim that they will suffer "significant prejudice" if required to bring their federal trademark claims in state court because Defendants have made certain representations in state court that "seek to prevent Plaintiffs from litigating their counterclaims" until Defendant's claims are first adjudicated. This argument does not pertain to the public-interest factors quoted above and does not suggest that the forum selection clause is the type of exceptional cause warranting an exemption from the parties' agreed upon forum.

Dated March 6, 2025.

BY THE COURT:

*/s/ Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE